IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KO IWASAKI,<br><br>        Plaintiff,<br><br>vs.<br><br>P&G RARE VIOLINS, INC. (D/B/A BEIN & FUSHI, INC.), BEN-DASHAN, INC., GABRIEL BEN-DASHAN, individually, and PAIGE BEN-DASHAN, individually,<br><br>        Defendants. | No. 1:25-cv-00128<br>JUDGE JEREMY DANIEL<br>MAGISTRATE KERI HOLLEB HOTALING |

**RESPONSE OF DEFENDANT PAIGE BEN-DASHAN TO PLAINTIFF'S MOTION FOR EXPENSES AND FOR SANCTONS**

Defendant Paige Ben-Dashan, by her attorney David J. Letvin, responds to plaintiff's motion (ECF 107) by stating that the motion is unjustified, brought only to harass, and should be denied in full. In further support she states:

**RESPONSE TO SPECIFIC QUESTION RAISED BY THE COURT**: In its minute order ECF 108 the court requests the answer to this question: "why Plaintiff's counsel was only notified of the deposition cancellation through its website and not by contacting any attorney directly."

The very first thing defendants did when learning of the need to reschedule was directly notify plaintiff's attorney Tailim Song. The fact that this court did not understand from reading the motion that that is what happened is symptomatic of the plaintiff's misrepresentations throughout this case.

1

The facts are that the following occurred in notifying plaintiff's counsel, facts that the plaintiff's motion completely ignores, and are substantiated by documents which plaintiff's motion also ignores.

Undersigned counsel learned of the hospitalization upon checking email at or shortly after 6:35 a.m. Sunday morning September 21 and immediately thereafter learned that Mrs. Ben-Dashan would not be able to sit for her deposition the next morning.

In the very first action taken after learning of the necessity for the rescheduling of the deposition, Mr. Song was notified personally by email sent immediately directly to him that the deposition would have to be rescheduled. It was sent at 6:41 a.m. Sunday morning, more than 27 hours before the deposition was scheduled to begin. A copy of that email is attached to this response as Exhibit A. It states in full:

> Tailim,
>
> I'm afraid we are going to have to postpone and reschedule the deposition of Paige Ben Dashan, so I am writing now to avoid the inconvenience and expense of your making the trip today. The deponent has been hospitalized and we do not have any further information at this time. Once we know more either Bill Castle or I will be back in touch to reschedule at the earliest opportunity. I trust you will advise your court reporter.
>
> Please reply to this email to confirm your receipt of this message.
>
> Regards,
>
> David Letvin

The plaintiff conveniently omitted this document in his motion before this court.

In addition to notifying Mr. Song individually more than 27 hours before the deposition was scheduled to begin, that it would have to be rescheduled because of the hospitalization, note that the email also asked for a reply to confirm his receipt of the message.

Concerned that additional efforts to confirm the notice should be pursued, undersigned counsel took further action to notify Mr. Song of the need for postponement. A review of prior emails indicated that Mr. Song's communications did not bear a mobile phone number. So using a search engine, the website of his firm was located and accessed in anticipation that a mobile or other direct access phone number might be available there. Neither was evident.

The only phone number it showed for contacting him was the firm's general number. Past experience calling the firm had shown that even during normal business hours one could plan to be placed on hold and forced to listen to recorded music and not be given a voice-mail option, so an early Sunday morning before 7:00 a.m. call to the general number was not likely to make contact with a living person a reasonable possibility.

However, it was noted at that time that the website did present an option for sending Mr. Song a text message. (A check of the website as of this writing indicates that that option is no longer appears available.) Therefore, a text message was sent using the link provided on his firm's website. It did not go through. Upon receipt of the notice that the text did not go through, it was resent. Once again it did not go through.

After a brief time had passed and no confirmation of receipt of the 6:41 a.m. email had been received, a review of Mr. Song's firm's emails indicated that a paralegal named Shayla Hamilton appeared on some of his firm's emails concerning this matter. So at 7:54 a.m. an email was sent to Ms Hamilton of Mr. Song's office.

It stated: "I do not have a mobile number for Mr. Song and text messages sent via your firm website to him are not deliverable. So please ask him to check his email before his departure to Chicago on September 21, as the Monday deposition must be rescheduled." A copy of that email is attached as Exhibit B.

3

When no response had been received to that email, a third attempt to send a text message was made via the firm's website link. That too was undeliverable.

No acknowledgement was received from anyone from Mr. Song's firm to either of those emails until an email from Ms Hamilton at 12:44 p.m. In that email she requested confirmation by 2:00 p.m. that rescheduling would be needed, and at 1:18 p.m. she was notified that the deponent remained hospitalized. That exchange is shown in Exhibit B.

It was not until much later, on Sunday at 6:46 p.m., that Mr. Song followed up confirming by email his receipt of the notice. His email states that he will "take a certificate of nonappearance" and return to Dallas. That email and undersigned counsel's response to it are attached as Exhibit C. In the response, at 7:48 p.m., we agreed to stipulate to the non-appearance precisely to avoid the expenses being sought here. It states, in full:

> Tailim,
>
> I will stipulate that my hospitalized client did not appear, that you were advised very early this morning, more than 24 hours before the agreed upon date deposition date and time, that she was hospitalized and would therefore not be able to appear, and that the deposition would therefore have to be rescheduled. There is no reason for you to incur the expenses of the reporter or for you to go through the charade of complaining about her non-appearance. I hope to contact your office tomorrow or Tuesday to arrange a new date.
>
> By the way, you should be aware that though your firm website provides the option to send you text messages, when utilized three times this morning the messages advising you to check your email for a message from my office from very early this morning, in all likelihood sent before you left Dallas, all failed to deliver.
>
> David

Significantly, in the pending motion itself the plaintiff *acknowledges* Mr. Song's receiving the email notice from counsel *before* Mr. Song even arrived at the airport in Dallas to fly to Chicago, let alone before his flight left. See ECF 107 p. 1, para. 1, line 6-7. He nonetheless came.

4

**MEDICAL**. On the morning of Saturday September 20 Mrs. Ben-Dashan awoke unable to raise her head or get out of bed, experiencing persistent weakness, vertigo and dizziness. She was taken initially to an urgent care facility where because of the seriousness of her symptoms she was refused treatment and therefore, at around 2:00 p.m., she was taken to the emergency room at Northwestern Memorial Hospital in downtown Chicago.

At the hospital the physician attending determined that given the persistence and character of her symptoms she should be admitted for further testing and observation. She was treated with various drug therapies and, at 4:30 a.m. on Sunday morning, a MRI was performed. She was not released until after 2:00 p.m. on Sunday afternoon, September 21, after the results of the MRI were interpreted. She remains under doctors' care, with physical therapy, further evaluation, and medication. In accordance with the court's directive (which speaks in terms of *in camera* submission by "plaintiff" in response, and which we understand to be a misnomer directed instead at *defendant's* option to submit medical for *in camera review*), documentation showing her symptoms, diagnosis, and treatment are submitted for in camera review.

She does not consent to the details of her health being made available to the plaintiff or his counsel, as none are at issue in this case, which concerns a commercial transaction between the plaintiff and this defendant's former part-time employer ten years ago in which she played no part. Similarly, she respectfully requests that the court not identify any facts concerning her medical condition or care in any order that will become public.

In discussions concerning resolution of the present dispute concerning alleged expenses relating to the postponement of the deposition, Mrs. Ben-Dashan's ultimate diagnosis was shared with plaintiff's counsel. That sharing was made on an attorney's eyes only basis at the express

written suggestion and invitation of plaintiff's attorney Ivan Cellis. See email attached as Exhibit D. There counsel states:

> "we cannot accept a phone call as a substitute for the written verification we've requested. If Mrs. Ben-Dashan's hospitalization was truly emergent and non-elective, then providing the basic information: (1) the reason for her hospitalization, (2) whether it was emergent/ER or otherwise non-elective, and (3) when she first learned she would need to go, should not be controversial. We will treat it Attorneys' Eyes Only, but we must have it in writing for the record."

Plaintiff nonetheless has violated that undertaking by not only identifying the diagnosis in the present motion (e.g., but not limited to ECF 107, p. 5, para. 12, 14), but also gratuitously contesting the seriousness of her condition without having any knowledge of it or its ongoing treatment.

**PLAINTIFF'S ARGUMENTS ARE NOT JUSTIFIED.** Plaintiff's motion relies on two rules. Neither justifies the relief sought.

**F.R.Civ.P. Rule 30(g)(1)**. This rule is facially inapplicable. It only applies to cases where "the noticing party" fails to attend a deposition. Paige Ben-Dashan was not the noticing party. Ko Iwasaki was. Plaintiff cites no authority holding that a party deponent whose deposition is noticed by an opposing party is a "noticing party" for purposes of this rule. His argument that Mrs. Ben-Dashan had any burden of substantial justification under this rule (ECF 107, para. 3) is likewise meritless. The entire argument trying to apply Rule 30(g)(1) here is specious and made in bad faith.

**F.R.Civ.P. Rule 37(d)**. Relief under this rule is permissive, not mandatory, and clearly uncalled for here. The rule says the court "may, on motion, order sanctions" including payment of "reasonable expenses including attorney's fees, caused by the failure [to appear for noticed deposition, Rule 37(d)(A)(i)] unless the failure was substantially justified or other circumstances make an award of expenses unjust."

It requires as a condition to any motion for relief under the rule that the movant provide the court with "a certification that the movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action." Rule 37(d)((1)(B). The structure of the rule makes clear that the certification requirement is applicable to motions brought for failure to attend a noticed deposition, which is a "response" to discovery within the meaning of the rule.

Here the plaintiff has provided no such certification, and in fact Mrs. Ben-Dashan, accused in the motion of failure to act, in point of fact appeared for her deposition on November 24 (the earliest dates that was allegedly available on Mr. Song's calendar), answered the questions of Mr. Song for six hours, and did so before this motion for expenses and sanctions was filed. See Exhibit E, showing the beginning and end times of the deposition.

Furthermore, the condition of subparagraph (3) is clearly applicable: the failure to appear on September 21 was clearly "substantially justified or other circumstances make an award of expenses unjust."

Mrs. Ben-Dashan's medical condition and hospitalization, as shown in the documentation submitted *in camera*, and the timely notice given to plaintiff's attorney as well as the further efforts to communicate and substantiate his receipt of notice, constitute substantial justification and other circumstances within the meaning of the rule. The deponent's offer to stipulate to the facts that would obviate the need to incur expenses, her appearance for her six hour deposition that quite clearly involved much more than what plaintiff now claims would have been only a "short examination (ECF 107, para. 13)," and the absence of the certification required by the ruled all support denial of the motion.

**Plaintiff's other arguments are unavailing**.

No showing is made of the reasonableness of making travel plans by plaintiff that were not subject to cancellation or refund, and no showing is made that any of the claimed expenses were in fact not credited back to the plaintiff in one way or another.

Plaintiff argues that it was the defendant's burden to demonstrate to him the details of the deponent's medical condition. This is a claim that was never asserted in the discussions attempting to resolve this dispute. In the efforts to resolve this without bringing it to the court, plaintiff asked for only limited information, as quoted above from Exhibit D.

In good faith reliance on the foregoing request, answers to those questions were provided on the promised "attorneys' eyes only" basis. Not only was that understanding violated, but the limited scope of the inquiry has now been ignored. Now they claim to be entitled to detailed medical records, affidavits and evidence about what Mrs. Ben-Dashan was and was not capable of doing at any particular time. (e.g., ECF 107, pp. 16-17). And plaintiff argues to this court that this attorney eyes imitation, which they themselves suggested, is somehow questionable.

The fact remains that Mrs. Ben-Dashan's medical condition is not an issue in this case.

In addition, in attempting to resolve these matters, we inquired as to precisely when Mr. Song's flight left Dallas, and the factual and legal basis for his claim for fees. His office refused to provide that information (Exhibit D).

Only in reviewing the motion have we confirmed what we suspected, namely that notice was given to Mr. Song of the need to reschedule well before he left Dallas—indeed, before he even arrived at the Dallas airport (ECF 107, para. 1). And he wants to prove up his fees by affidavit but has not provided to this court and refuses to produce to us his fee agreement, making the bogus argument that that is privileged and not subject to our review even though he is seeking payment of his fees from an adverse party. See Exhibit D. See, e.g., *Huntington Chase Condominium*

8

*Association v. Mid-Century Insurance Company*, N.D. Illinois, No. 16 C 4877, Opinion of Magistrate Schenkier, February 1, 2017, p. 11, rejecting the argument that a fee agreement is privileged.

 WHEREFORE defendant Paige Ben-Dashan prays that the court will deny the plaintiff's motion for expenses and sanctions, and such other and further relief as it deems appropriate under the circumstances.

              PAIGE BEN-DASHAN


             By: /s/ David J. Letvin

David J. Letvin
ARDC 1626256
P.O. Box 151
Wilmette IL 60091-0151
773-703-2303
letvinandstein@gmail.com
davidletvin@aol.com

9